And I should say that we are joined today by Judge Kevin Castell from the Southern District of New York. We're very grateful to him for sitting in. We benefit from his experience and his wisdom, and thank you for being here today, Kevin. Thank you, Judge Sullivan. All right. So, Ms. Macini. Macini. Macini. Okay, sorry. So, Ms. Macini, you have reserved two minutes for rebuttal. That gives Good morning. May it please the court and opposing counsel, this matter, Your Honor, relates to an incident where the plaintiff appellee was creating a disturbance at the Yale New Haven Valley parking drive-up. The defendant appellant was called to respond and, you know, after some time trying to de-escalate and get the plaintiff out of his vehicle, force was required to be used after he assaulted. So, can I ask, one of the things that I found really interesting was the fact that your opening brief did not mention the job case in our circuit at all. You reference it in the reply brief. Can you talk to me about how you think JOC informs what we're doing here today? Sure, Your Honor. Your Honor, I think that the difference with this case is since Barnes v. Felix, that is a binding precedent that necessarily voids the district court's decision here. Well, I mean, so the question is, why do we have interlocutory appeal when, as I understand it, you're asking us to find that, or why do we have jurisdiction to review at this point when you're the one asking us to find the context is what, in your, in what your argument is, or the way I understand your argument, context is why immunity attaches. Immunity attaches, Your Honor, pursuant to Scott v. Harris, which binds this court, which sets forth the hierarchy of how you review evidence in a case such as this. But that's only if the evidence is so overwhelming that it overcomes testimonial evidence. Is that your position? Like, if we read this and say, no, we thought he was standing outside, and when he was doing nothing after he was confusedly pulling off the taser, he then just got punched in the face, if we don't think that the evidence is exonerant, that the video is as clear to suggest that there's immunity, does that mean you lose? Are you conceding that? No, no, Your Honor. First, the court should look at the videos, the body cam footage, which there's three here that are in the record, that of my client, Salvatore Ricci, as well as that of Officer Penna and that of Sergeant Jackson. And if you review all three of those videos, I believe it is irrefutable. No, but would, maybe, okay, so I don't want to get into that quibble. I'm trying to deal with the law we're having to deal with here. Would you agree that the proposition is that, of Scott Peter Harris, is that if the video is so clear that it overcomes a testimonial debate, a testimonial dispute, then you can look at the video? Yes, Your Honor, that's correct, I agree with that. Okay, so what happens if we don't think the video is so clear as to overcome the testimonial dispute? Your next step is to look at the plaintiff's testimony and where the plaintiff fills in the blank as to a material issue of fact. Okay, so which of the facts of plaintiffs with respect to what happened after he got out of the car are you accepting as true? I don't, I believe everything is... Are you accepting that he was standing there and that he had not, I mean, he alleges that after he got pulled out of the car and was in pain, that he was just standing there and then he got punched in the face. Your Honor... You don't accept that, right? I don't accept that testimony because that testimony is completely discredited by the body cam footage. Okay, so we're back to if we disagree that the body cam video is that clear, then we're back to his testimony. Is that right? That's right, Your Honor. Yes, that is right. Can I actually ask you to break this up? It seems to me that the claim alleges a couple of incidents of excessive force. One set of acts while he's in the car, the punches to the head while he's in the car, and then also when he gets out of the vehicle, the tasing and the forearm strike to the neck or to the face. So with respect to in the car, there you're relying on basically just body cam will show that he's resisting arrest and is not following orders to get out of the vehicle. Is that correct? That's correct, Your Honor. And in fact, if you look at Officer Pena's body cam, you can see in the side view mirror as well as through the window in his body cam, you can see the plaintiff assault Sergeant Jackson. And you can see that, in fact, Sergeant Jackson. Well, I'm not sure you can, but I guess the question is does it matter even at that point? I mean, if there's a dispute as to whether Sergeant Jackson was, you know, where and whether he was struck or hit. But if he's resisting arrest and not complying with lawful instructions to get out of the vehicle, does it matter? It doesn't matter, Your Honor. That's 100 percent correct. Once my client used force, the plaintiff had already shown a proclivity to be violent and to harm another officer. He posed an imminent threat. So that's what resulted in the requirement to use the force. Well, I'm a little bit confused. So if we agree with you as to the first striking, the first hit, does that in any way justify or an argument for justification of the second hit, the one that Judge Perez referred to, standing outside the car, hands arguably up, handcuffed, one arm handcuffed, and wobbling while he is struck in the head by Ricci? Does that, does the first use of force somehow justify the second use of force? The use of force for the second strike was justified by the plaintiff removing the taser prongs, which is active resistance. He also took his right arm away from a Yale New Haven security guard who was attempting to assist to get him cuffed. Do you have any case law that supports the proposition that removing the taser darts is resisting arrest? I do, Your Honor. It's cited in my reply brief. I see I'm almost out of time. Part of what I'm, it's, we're dealing with excessive force, not force, right? Like, isn't that the issue, is that it was more force than what was permissible, not force at all. Does that make any difference? I'm sorry, Your Honor. Can you repeat that? In conclusion, I think pursuant to Barnes v. Felix, that case results in the district court's ruling being reversed and qualified immunity applied because the lower court did not review the totality of circumstances, which included ten minutes of de-escalation, the plaintiff assaulting Sergeant Jackson, causing him pain, requiring medical treatment, refusing to get out of the car, actively resisting, placing his arm in the steering wheel, continuing to fight with officers, officers instructing him to get out, warning him, I think, about eight times, you're going to be tased, get out, get out, this is your last chance. He's sort of getting out of the car. His left arm is placed in handcuffs, but he is saying nope, nope, when they're saying get out of the car and, you know, let us cuff you. So then when he's tased, he pulls out the prongs. That is active resistance. I guess the question is at what point was it appropriate to tase him when he's out of the car? And so, I mean, it seems like the law is pretty clear that if a person is not posing a threat, at that point the threat has been diminished. He's now handcuffed to the door and he's sort of standing still. Why is it necessary to tase him? It is necessary to tase him. He has not been checked for weapons. He's shown himself to be violent with officers. The officers don't have to wait for him to come at them with a screwdriver or a knife or some other weapon before putting down the threat. He raised his right arm away and put it in the air just before the taser strike, which indicated to the officer that he may be going for a weapon or posed a threat. I'm not going to hurt anybody. Look, I have nothing in my hands, right? That could be a way of interpreting that? Not from the video footage, Your Honor. I strongly disagree. Thank you. I see my time is up. All right. Well, you've reserved two minutes for rebuttal. I hear from Mr. Blunt. Am I pronouncing that right? It is correct, Your Honor. Thank you. Mr. Blunt. May it please the Court, Your Honors. The answer to Judge Perez's question is that under JOC, this Court does not have appellate jurisdiction to decide a qualified immunity issue where the district court's ruling revolved around disputed issues of fact. So let's talk about in the car because there are some disputed issues of fact, I think, but I'm not sure why those are material or matter. There doesn't seem to be any dispute that your client was resisting arrest and that he was refusing to get out of the vehicle even though he was directed to, right? Not exactly, Your Honor. Judge Oliver made a very detailed analysis of what exactly took place during the first ten minutes of the encounter. And Officer Ricci thought that Mr. Martinez may have been having a mental health episode. That's probably right. You've seen the tape. That may be, but I guess you're saying there's a dispute as to whether he was resisting arrest? Correct. He was not placed under arrest. Officer Ricci did not say, get out of the car. Officer Ricci tried to cajole, I think in the words of Judge Oliver, Mr. Martinez to get out of the car. The first time Officer Ricci ordered Martinez to get out of the car is after the blows to the head in the car, after Officer Ricci reached for the taser and said, get out. After he was given an order to get out, he got out. He got out, as Judge Perez noted, with his hands up. Martinez says before he's even touching him, I mean, just immediately before, this is enough. Come on. And he judges him to take him out of the car. Right. And he doesn't have to follow that, in your view. He's not placed under arrest, Your Honor. He's having a mental health episode. I mean, you're saying he has to be placed under arrest and the officer has to click his heels three times? I mean, he's ordered him out of the car at that point. Well, did he or did he, in Judge Oliver's conclusion, try to cajole him to get out of the car? It really appears to be more the latter. And, again, why we're even initiating contact, why we're initiating force at this point where there's no threat to officer's safety, there's actually not a crime being committed. The man's at a hospital. But he's not permitted to be parked there, right? He's blocking an entrance to a hospital. And he's trying to go into the hospital. And he was, according to his version, he was doing what he had been told to do before he went, if he ever had to come back to the hospital, and that is to ask for a security guard supervisor. That seems to me to be not legally significant and separate from what Judge Sullivan is trying to figure out, which is we're trying to figure out which of the three incidences we've been talking about for which there are some facts that are not disputed. So you're disputing that he resisted arrest? Correct. Okay.  And that's what Judge Oliver found, that there had not been an arrest. There had not been an unequivocal order to get out. There had been a request for a mentally ill person having some kind of a mental health episode to exit the car. Okay. So if we disagree that it wasn't a request, do you lose? No. Okay. Now, so why don't we talk about the second incident? Well, arguably the third, the blow to the head because the taser. There's actually four. The grabbing, the punching in the head after Mr. Martinez had released Sergeant Jackson's wrist, then third, the blows to the head, the five approximately blows to the head, then the taser, then the blow to the face with the forearm. So there are several uses of force here. The most egregious is obviously the last one. When Mr. Martinez is standing outside the car, his left wrist has. But we're trying to figure out what facts are not disputed because we need to figure out if there is enough to. . . I mean, you're. . . So can we go back to them in the second issue? Are there any, what you're calling the second part, are there any facts that you're not disputing there? Well, my burden is not to dispute the facts, Your Honor. It's their burden to give us a record that has undisputed facts. And under Jock and under the Fagan against Kiley. . . Are you disputing that he grabbed Mr. Jackson, Officer Jackson? I'm sorry? Are you disputing that he grabbed Officer Jackson's wrist? Yes, Your Honor. It appears that there is language on the tape where Officer Jackson says, you have my wrist, and I don't remember the exact words, you have my wrist, let go, then he lets go. That's it. That is the only affirmative step that Mr. Martinez took, assuming it was taken, at all. The defense argued. . . Do you have any evidence disputing the fact that it was taken? Because right now we have audio evidence of somebody saying it. Where is the testimonial or other evidence saying it didn't happen? In his deposition, it's cited in my brief, Your Honor. He says that he doesn't know whether he did or not. And so that's the best we have. It is not shown on any of the videos that the wrist was grabbed. And in the district court, the defendant argued that his striking Mr. Martinez multiple times in the head was justified in order to get Mr. Martinez to release Jackson's wrist. That is just not true. And now he concedes that that's not true. But in any event, the blows to the head followed any claim that the wrist was being held by somewhere around 17 seconds.  But he's not getting out of the vehicle. Well, at that time, there aren't instructions to get out of the vehicle. They're just pulling on his leg. And you've got to remember, Your Honors, this is a man. . . You've got to say, you are under arrest under penal law 1632C. When Officer Ricci gave Martinez an unequivocal order to exit the car, he did. He did. That's just not the video. I mean, I don't see how you could say that. I mean, he's locked himself. He's locked his arm into the steering wheel. It's only when he's threatened with being tased that he then gets out. Well, he's ordered out, then threatened with being tased, I think. But nonetheless, he gets out with his hands up. He doesn't get out until he's threatened with being tased. But, I mean, I guess you're insisting that Ricci's telling Martinez, this is enough, come on, after having asked him multiple times, get out of the car, let's get out of the car. Then he says, this is enough, come on. That's not sufficient for him. That's not a sufficient instruction for him to know that he has to leave the car. Judge Oliver found, for the purposes of the summary judgment motion, that that was not unequivocal enough to justify the initiation of force.  Which is grabbing him. But that's on the video. That's not disputed, right? I mean, the video, you're not saying the video is false. No, no. Or that the language is unclear or that it's been doctored. No, the video is what it is. And I should note, Your Honors, I'm the one who put Pena's and Jackson's video into the summary judgment record. I don't care who did it, anyway. I mean, it just seems to me that the fact of what was said to your client is not in dispute, right? At that particular moment. And anything on the tape, I agree, that that is not disputed. What's disputed is whether that was objectively reasonable under these circumstances of a plaintiff or a suspect in a mental health episode at a hospital, by the way, who is being pulled out by his injured leg. And you can see the brace, the immobilizer on his leg. Sergeant Jackson is yanking him out by the leg. He's complaining about pain in the leg. He's complaining about pain in the back. He is ultimately hit in the head multiple times. He is clearly dazed when he gets out of the car. He is — Sergeant Jackson handcuffs his left wrist, clearly. His right wrist is being held by a Yale New Haven Hospital security guard. He does not try to ball up his right hand. Your Honors see that on the tape. He does not try to take his hand away. The guard lets his wrist go when Officer Ricci pulls the Taser out because they think the guard is probably concerned about getting the charge from the Taser himself. And Martinez didn't do anything with his right arm other than at one point have it on the door frame for balance. Again, with his left leg in an immobilizer, that is entirely understandable. So there is a long list of factual disputes here. Was he combative, as the defense says, or was he in a mental health episode? Was he ordered out of the vehicle or was — Wait, wait. Was he combative or was it a mental health episode? Why are those mutually exclusive? Well, because until Officer Ricci initiated the use of force, grabbing Martinez, Martinez was entirely noncombative. He did not threaten officers. He did not demonstrate any weapon. Well, he's completely noncompliant. I mean, he's — I mean, we've seen the video. He's not getting out of the car. He's just being difficult. He's being sort of nonsensical. But nonetheless, he's — you know, so I don't know if I could say he's not being combative. He seems quite combative. Well, I think that — Not being violent, maybe. He's certainly not being violent, not being threatening. There's no claim — and they've been told by another security — I agree with you. He's being — But they — I mean, they're not even — they can't even open the side door, right? The passenger side door. That's right. But in fact, there were no weapons. And when Mr. Martinez got out of the car with his hands up, he clearly did not have any weapons in his hands. And at least no weapons were visible anywhere else. So — and I understand. There is a long — there's a continuum of the use of force here. And the one that is impossible to justify under any set of circumstances is the last one. You've seen the video. You've read the testimony. But nonetheless, is it reasonable — let me back up a little bit. Was it reasonable for Officer Ricci to initiate the use of force by grabbing him, grabbing Martinez and trying to pull him out of the car? So, I mean, I guess the issue is whether there is any law that says it was wrong for him to do that, right? Would any reasonable officer have believed that it was improper to use — to initiate force to say, get out of the car? I did offer, actually, a report from our expert on that, former police chief Lou Deckmar. I don't really care what the expert has to say. I mean, it seems to me, is there a law on this? I mean, do you have a case that suggests that officers have to sort of cajole and tiptoe around, and then when a person refuses to get out of a car, they have to just sort of grin and bear it? I guess I don't see any — I'm not aware of any law that says you have to do that. Well, I think one of the mysteries here, Your Honor, is why the police — he's at a hospital. And why did the police even — I understand that they were called to the scene by the New Haven security guards. They didn't initiate contact on their own. This was a mental health episode. It was a medical problem that Officer Ricci is the one who started the use of force by first attempting to pull Martinez out of the car by his injured leg, by his arm, then assaulting — by hitting him multiple times in the head when all he was — when he was not threatening an officer, when he was not resisting, when he was being nonsensical, perhaps. I might concede. Let me be clear on this. So if I get pulled over and the cop says, get out of the car, and I say, no, I prefer not to. I'm going to just stay here. They don't get to just forcibly remove me from that car. They've got to ask me nice. They've got to see if I'm feeling well, if I'm having a mental health episode, before they get to initiate force. That's your position. If there is an unequivocal order to leave, you're under arrest, then that's different. Well, how about just — You're under an unequivocal order to leave the car. Which — Is that enough? Which ultimately happened, and he did. No, no. Is that sufficient, or does the officer have to say, you're under arrest? I think there needs to be a clear direction to exit. And particularly for somebody — I'm sorry. So you're saying that the person doesn't have to be under arrest. I'm having a very hard time trying to figure out if you could just try to answer our question. So you got asked, can someone get told, you have to remove from the car that is not accompanied by a, you are under arrest, and the officers be allowed to use force to effectuate your removal? Well, I think then it's a carry stop, right? If there is a suspicion that a crime has been committed, the officer has the ability to ask a person to exit a car to be frisked. But what's the crime here? First of all. But second of all, what's the justification for the initiation of force? And that was Officer Ricci's under the circumstances, but it led to an escalating series of uses of force that were not justified by Mr. Martino's reaction. So what happens — Go ahead. What happens if we disagree with you about whether or not the use of force to remove him from the car was proper? Can we still find that the tasing and or the striking him in the face was excessive force? Of course, because they're separate episodes. It's not as under the Graham against Connor decision. We have to take into account all of the circumstances. It's a continuum. It's not a series of episodes. It's a continuum. And at the time, the clearest violation here obviously is the last one. At that point, he is completely dazed. His hands are up. He does not have a weapon visible. He is not refusing instructions. And he still gets a forearm crushed to the face that, as Officer — was hard enough that Officer Ricci said afterwards, I guarantee I broke that kid's face. So if he was resisting leaving the car, that does not justify Officer Ricci in doing what he did later, nor does it justify Officer Ricci punching him five times in the head after the original use of force. Let me get back to the jock issue, if I may, for a second. The appellant's brief says that thereafter the officer struck him a final time to bring him under control. That's page 38 of the appellant's brief. Do you concede that the final strike was to bring your client under control? Absolutely not. And did you concede that in the trial court? I didn't — And did you concede it here? No, Your Honor. That is — he was under control. Is that dispositive of the jurisdictional issue? Yes. Yes, because that — the justification for that last use of force, he was under control by that time. Sergeant Jackson — they've said in their brief that the reason that they used that last blow was to enable the handcuffing of the second hand. Nobody tried to cuff his second hand. Sergeant Jackson didn't try to put the handcuffs on his right hand. The Yale security guard had Mr. Martinez's right hand. He was under control. You've seen — obviously, Your Honors have all looked at the video. I do not concede that the last blow was required to bring Mr. Martinez under control. All right. Well, we've gone over, but we'll hear two minutes of rebuttal from Ms. Messini. Thank you, Mr. Vlas. Thank you. Thank you, Your Honor. With respect to the indication that the plaintiff was having a mental health episode and that my client, in speaking with him, thought that may be the case, my client didn't know if it was drugs, alcohol, or mental health, and statements that were made to other officers in the background are not imputed to him. But in any event, the fact that he may have been having a mental health issue does not give him a pass to break the law, cause a disturbance, and assault an officer. I will just sum this up by saying, pursuant to Barnes v. Felix, the district court decision should be voided because it is clear that Judge Oliver made his decision based on the fact that the plaintiff was not actively resisting when he was punched, according to Judge Oliver, because the wrist had been released of the sergeant. That is incorrect, according to Barnes. And with respect to... But what is incorrect, according to Barnes? The moment of threat analysis is incorrect. Qualified immunity cannot... All right, but you make that argument throughout your brief, but it's not clear to me at all that the district court engaged in the wrong law. The district court didn't cite the wrong cases or suggest that it wasn't considering the totality of circumstances? The district court found an issue of fact as to whether the force was reasonable because when Officer Ricci commenced the hand strikes on the plaintiff, Sergeant Jackson's wrist had already been released with respect to that use of force. That's a moment of threat analysis that the court did there. And with respect to the taser, the court said there was an issue of fact as to whether he was compliant at that point. But that decision disregards everything that happened for the 10 to 12 minutes preceding those uses of force. With respect to the last... Well, what happens if an individual is actively resisting and then ceases the resistance? Are you saying that the use of force at that point is objectively reasonable? It's all dependent on the circumstances, Your Honor, and the facts of the specific case. And in this case, the plaintiff posed a threat. He had not been cleared for weapons. He had shown a proclivity to assault the officers, and he was disregarding every instruction, saying, nope, nope. And even in that last instance before my client deployed the taser, he was indicating that he wasn't going to comply. He said, my leg is effed up. He's making excuses for his noncompliance, and they weren't sure whether he had a weapon or not, and that's why it was necessary to use the taser and then do that final strike in order to get him subdued and into handcuffs. One handcuff on the left arm is not... He wasn't under control at that point. He wasn't fully in cuffs. Thank you. All right, thank you both. We will reserve decision.